# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| FORTE BIOSCIENCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N24C-10-015 |
| | ) | PAW CCLD |
| WESCO INSURANCE COMPANY, | ) | |
| BEAZLEY INSURANCE COMPANY, | ) | |
| INC., and PALMS INSURANCE | ) | |
| COMPANY, LIMITED, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: October 9, 2025
Decided: January 8, 2026

*Upon Plaintiff Forte Biosciences, Inc.'s Motion for Judgment on the Pleadings*;
**GRANTED.**

*Upon Defendants Wesco Insurance Company's and Palms Insurance Company, Limited's Motion for Judgment on the Pleadings*;
**GRANTED in part, DENIED in part.**

*Upon Defendant Beazley Insurance Company Inc.'s Motion for Judgment on the Pleadings*;
**GRANTED.**

## MEMORANDUM OPINION AND ORDER

William J. Burton, Esq.; and Lilit Asadourian, Esq., of Barnes & Thornburg LLP, *Attorneys for Plaintiff Forte Biosciences, Inc*.

Maria R. Granaudo, Esq., of Burns White LLC; and April H. Gassler, Esq., of Thompson Gassler LLP, *Attorneys for Defendant Wesco Insurance Company*.

Marc S. Casarino, Esq. of Kennedys CMK LLP; and Jonathan S. Zelig, Esq., of Day Pitney LLP, *Attorneys for Defendant Beazley Insurance Company, Inc*.

Richard Renck, Esq.; Brandon R. Harper, Esq.; and Richard D. Hoffman, Esq., Duane Morris LLP, *Attorneys for Defendant Palms Insurance Company*.

**WINSTON, J.**

## I. __INTRODUCTION__

This is an insurance coverage dispute between Plaintiff Forte Biosciences, Inc., and three insurers: Defendants Wesco Insurance Company, Palms Insurance Company, Limited, and Beazley Insurance Company, Inc. (collectively with Wesco and Palms, "Insurers").[1] Wesco and Palms each issued Forte Directors and Officer Liability ("D&O"), insurance policies (the "Wesco Policy" and "Palms Policy"), for June 2022 to June 2023 ("Year 1").[2] Beazley issued Forte a D&O insurance policy (the "Beazley Policy"), covering June 2023 to June 2024 ("Year 2").[3]

In 2023, non-party Camac Fund, LP, filed a complaint in the Delaware Court of Chancery against Forte and its directors (the "2023 Lawsuit"), alleging the Forte Board breached fiduciary duties and naming Forte as a nominal defendant.[4] Although filed in Year 2, Forte seeks coverage for the 2023 Lawsuit under its Year 1 Policies, arguing Camac's suit is meaningfully linked to a previously noticed 2022

---

[1] *See generally* Complaint (hereinafter "Compl.") (D.I. 1).

[2] *See id.* ¶¶ 36-49, 61-66; Compl., Ex. U (hereinafter "Wesco Policy"); Ex. V (hereinafter "Palms Policy"). The Palms Policy provides excess coverage Policy and follows the Wesco Policy's terms in all relevant respects. *See* Palms Policy § 1. Accordingly, the Court focuses its analysis on the Wesco Policy, but notes all conclusions apply equally to the Palms Policy.

[3] *See* Compl. ¶¶ 76-90; Compl., Ex. W (hereinafter "Beazley Policy").

[4] *See* Compl. ¶¶ 17-18; Compl., Ex. C (hereinafter "2023 Lawsuit Compl.").

Section 220 books and records demand (the "2022 Demand").[5] Alternatively, Forte argues the Beazley Policy covers the 2023 Lawsuit as well as a related books and records demand (the "2023 Demand," together with the 2023 Lawsuit, the "2023 Actions," and together with the 2022 Demand, the "Demand Letters").[6] Each Insurer denies its Policy provides applicable coverage.[7]

Before the Court are Forte's,[8] Beazley's,[9] and Wesco/Palms's[10] Motions for Judgment on the Pleadings (the "Motions"). Each Motion asks the Court to resolve the 2023 Lawsuit coverage dispute in movant's favor.[11] Additionally, Insurers seek judgment in their favor on Forte's bad faith claim.[12] For the reasons discussed

---

[5] *See* Compl. ¶¶ 50-60, 67-75, 116-128; Compl., Ex. A (hereinafter "2022 Demand Letter).

[6] *See* Compl. ¶¶ 91-106, 116-128.

[7] *See generally* Answer of Defendant Wesco Insurance Company to Plaintiff's Complaint (hereinafter "Wesco Answer") (D.I. 23); Answer and Affirmative Defenses of Beazley Insurance Company, Inc. (hereinafter "Beazley Answer") (D.I. 24); Defendant Palms Insurance Company Limited's Answer and Affirmative Defenses to Plaintiff's Complaint (hereinafter "Palms Answer") (D.I. 25).

[8] *See generally* Plaintiff Forte Biosciences, Inc's Motion for Judgment on the Pleadings (hereinafter "Forte Opening Br.") (D.I. 38).

[9] *See generally* Opening Brief in Support of Motion for Judgment on the Pleadings (hereinafter "Beazley Opening Br.") (D.I. 37).

[10] *See generally* Memorandum of Law in Support of Defendants Wesco Insurance Company's and Palms Insurance Company, Limited's Motion for Judgment on the Pleadings (hereinafter "Wesco Opening Br.") (D.I.36).

[11] *See generally* Forte Opening Br.; Beazley Opening Br.; Wesco Opening Br.

[12] *See* Beazley Opening Br. at 24-25; Wesco Opening Br. at 38-39.

below, the court **GRANTS** Forte's Motion, finding the Wesco and Palms Policies cover the 2023 Lawsuit. That result necessitates **DENYING** Wesco's Motion and **GRANTING** Beazley's Motion on the coverage issue. The Court also **GRANTS** Insurers' Motions regarding Forte's bad faith claim.

## II. BACKGROUND

### A. THE PARTIES AND FORTE'S D&O INSURANCE POLICIES

Plaintiff Forte is a Delaware corporation with its principal place of business in Dallas, Texas.[13] Defendant Wesco is a Delaware corporation with its principal place of business in New York.[14] Defendant Palms is a Cayman Island corporation with its principal place of business in Juno Beach, Florida.[15] Defendant Beazley is a Connecticut corporation with its principal place of business in Farmington, Connecticut.[16] All Insurers transact business in Delaware and provide insurance policies covering Delaware citizens.[17]

The Wesco Policy is Forte's primary Year 1 D&O coverage.[18] The Palms policy provides excess coverage and follows the Wesco Policy's terms in all relevant

---

[13] Compl. ¶ 7.

[14] Compl. ¶ 8; Wesco Answer ¶ 8.

[15] Compl. ¶ 10; Palms Answer ¶ 10.

[16] Compl. ¶ 9; Beazley Answer ¶ 9.

[17] Compl. ¶¶ 8-10; Wesco Answer ¶ 8; Beazley Answer ¶ 9; Palms Answer ¶ 10.

[18] *See* Compl. ¶ 36; Wesco Policy.

respects.[19]  The Wesco Policy covers, "a Claim first made against an Individual Insured during [Year 1] . . . for any actual or alleged Wrongful Act [and] . . . a Securities Claim first made against a Company during [Year 1] . . . for any actual or alleged Wrongful Act."[20]  "Claim" means "a written demand, other than a Derivative Demand, for monetary, non-monetary or injunctive relief" or "a civil [], regulatory, or administrative proceeding for monetary, non-monetary or injunctive relief[.]"[21]  A "Wrongful Act" is defined as "any breach of duty, neglect . . . omission or act by any Individual Insureds in their respective capacity as such, or any matter claimed against any such Individual Insured solely by reasons of his or her status as an Executive[.]"[22]

Critically, the Wesco Policy states:

> If during [Year 1] . . . [Forte] become[s] aware of any circumstances or Wrongful Act which may reasonably be expected to give rise to a Claim . . . and give[s] notice . . . of such circumstances, along with a description of the alleged Wrongful Act, the allegations anticipated, the

---

[19] *See* Compl. ¶¶ 61, 65; Palms Policy § 1 ("[e]xcept as otherwise provided herein, the insurance afforded hereunder shall apply in conformance with the provisions of the [Wesco Policy].").

[20] Wesco Policy § 1, Insuring Agreements B-C.  The Wesco Policy defines "Securities Claim" as "a Claim made against any Insured alleging a violation of any federal, state, local or foreign regulation, rule or statute regulating securities," including those "brought derivatively on behalf of [Forte] by a securities holder of [Forte]." *Id.* § II.O.  Forte is a "Company," and its Board members are "Individual Insureds" under the Wesco Policy. *See id.* §§ II.G, H.

[21] *Id.* § II.C.

[22] *Id.* § II.Q.

6

reasons for anticipating a Claim, and full particulars as to dates, persons and entities involved, then any Claim which subsequently is made against [Forte] . . . alleging, arising out of, based upon or attributable to such circumstances or alleging any Wrongful Act which is the same as or is a Related Wrongful Act to that alleged or contained in such circumstances, shall be considered made at the time such notice of circumstance or Wrongful Act originally was reported.[23]

"Related Wrongful Act" means "Wrongful Acts which are the same, repeated or continuous Wrongful Acts, or [] which arise from a common causal connection or cause the same or related damages, or have a common nexus or nucleus of fact."[24]

The Beazley Policy provides Forte D&O insurance for Year 2.[25] The Beazley Policy covers:

Loss resulting from any Claim first made against the Insured Person first commenced during [Year 2] for a Wrongful Act" and "on behalf of [Forte] Loss resulting from any Securities Claim first made against [Forte] during [Year 2] for a Wrongful Act.[26]

Under the Beazley Policy, "Claim" means: "any written demand for monetary damages, non monetary relief, injunctive relief or other relief against any of the Insureds or any civil . . . proceeding . . . initiated against any of the Insureds."[27] The Beazley Policy defines "Wrongful Act" in relevant part as "any actual or alleged act,

---

[23] *Id.* § VI.B.

[24] *Id.* § II.K.

[25] *See generally* Beazley Policy.

[26] *Id.* §§ I.A.1, I.C. The Beazley Policy defines "Securities Claim" as "any demand or proceeding . . . against any of the Insureds . . . alleging any violation of" federal or state securities law. *Id.* § II.X.

[27] *Id.* § II.B.

7

error . . . or breach of duty by any of the Insured Persons, while acting in their capacity as such[.]"[28]

The Beazley Policy contains several coverage limitations, three of which are relevant here.[29] First, the Beazley Policy does not cover any Claim "based upon, arising out of . . . or in any way involving any Wrongful Act or any fact, circumstance or situation which has been the subject of any notice given prior to [Year 2] and accepted under any other [D&O] policy."[30] Second, the Beazley Policy states multiple "Claim[s] involving the same Wrongful Act or Interrelated Wrongful Acts shall be deemed . . . a single Claim and shall be deemed to have been made at . . . the date on which the earliest Claim . . . is first made[.]"[31] Third, the Beazley Policy bars coverage of any Claim "arising out of, based upon . . . or in any way involving . . . [t]he Camac Fund's 220 Books and Records demand, subsequent litigation, and preliminary proxy solicitation" (the "Specific Events Exclusion").[32]

---

[28] *Id.* § II.BB.

[29] *See id.* § III.

[30] *See id.* § II.B.

[31] *Id.* § IV.C.

[32] *Id.* at Specific Claim Exclusion. Such Claims are excluded even if they "involved the same or different Insureds, the same of different legal causes of action or the same or different claimants or is brought in the same of different venue or resolved in the same or different forum [as] . . . [t]he Camac Fund's 220 Books and Record demand, subsequent litigation, and preliminary proxy solicitation." *Id.*

## B. CAMAC'S ACTIONS CHALLENGING FORTE'S MANAGEMENT

Beginning in August 2022, "activist investor" Camac began a series of actions challenging Forte's corporate governance.[33]

On August 26, 2022, Camac filed the 2022 Demand.[34]  The 2022 Demand's stated purpose was to:

> [1] determine the name and number of [Forte stockholders] . . . for purposes of potentially communicating . . . regarding [Camac's] concerns about [Forte's] Board and management; . . . [2] to investigate the suitability of Board members . . . [and] [3] to investigate potential mismanagement at [Forte] and to take appropriate action . . . including . . . filing a shareholder derivative lawsuit, if appropriate.[35]

The 2022 Demand alleged Forte:

> "Has Failed to Return Value to Its Stockholders or Develop an Active Business [and] . . . has executed on a value destructive transaction that calls into question the independence of the Board . . . [m]ost significantly . . . an ATM stock issuance after the emergence of four separate engaged shareholders who filed 13Ds which called into question the current direction of [Forte].[36]

Ultimately, the 2022 Demand asserted that the Forte Board had engaged in a value destructive, dilutive transaction "done to benefit Company insiders at the expense of the Company's stockholders," and it noted that its senders "fear[ed] that the Company will continue to dilute its stockholders at disadvantageous prices to

---

[33] *See* Compl. ¶¶ 11-28.

[34] *See id.* ¶¶ 11-14; 2022 Demand.

[35] 2022 Demand.

[36] *Id.*

9

continue funding money losing concerns."[37]  Forte submitted the 2022 Demand to Wesco without any additional facts.[38]  In a letter dated November 23, 2022 (the "Wesco Letter"), Wesco denied Forte coverage, but accepted the 2022 Demand as a "notice of circumstance which may give rise to a Claim related to a potential action against Forte in connection with its at-the-market offering of common stock."[39]

In November 2022, Camac filed a complaint against Forte in the Delaware Court of Chancery seeking additional books and records (the "2022 Lawsuit").[40]  In May 2023, Camac filed a preliminary proxy solicitation with the SEC—seeking support for two nominees to Forte's Board (the "Preliminary Proxy Solicitation").[41] The Preliminary Proxy Solicitation listed the 2022 Demand and 2022 Lawsuit as "events leading up to this proxy solicitation."[42]  The Preliminary Proxy Solicitation also complained of a "[t]rack record of value destruction," "[v]alue destructive initiatives," and the Board "[d]isregarding stockholder interests" as additional reasons to support Camac's Board candidates.[43]

---

[37] 2022 Demand.

[38] Compl. ¶ 51.

[39] Compl., Ex. G (hereinafter the "Wesco Letter").

[40] Compl. ¶¶ 15-16; *see* Compl., Ex. B (hereinafter "2022 Lawsuit").

[41] *See* Beazley Opening Br., Ex. 1 (hereinafter "Preliminary Proxy Solicitation").

[42] *Id* at 5.

[43] *Id* at 7.

In August 2023, Camac filed the 2023 Lawsuit.[44] The 2023 Lawsuit brought a direct claim for breach of fiduciary duty and a derivative claim for wrongful dilution against Forte's Board members and the company as a nominal defendant.[45] The 2023 Lawsuit alleged Forte's Board engaged in a series of value destructive decisions designed to entrench incumbent management.[46] The 2023 Lawsuit primarily challenged a 2023 private investment in public equity ("PIPE") stock sale through which Forte's Board allegedly diluted company stock to win an upcoming director election.[47] The complaint also discussed the ATM stock issuance,[48] which Camac alleged was "intended to neutralize unaffiliated voting power."[49] Later in the same month, Camac issued the 2023 Demand.[50]

After the Court of Chancery denied a motion to dismiss in the 2023 Lawsuit,[51] Forte and Camac executed a settlement agreement in June 2024.[52] The Court of

---

[44] *See* Compl. ¶¶ 17-21; Compl., Ex. C (hereinafter "2023 Lawsuit").

[45] *See* 2023 Lawsuit ¶¶ 136-52.

[46] *See id.* ¶¶ 24-77.

[47] *See id.* ¶¶ 78-101.

[48] *See id.* ¶¶ 46-53.

[49] *See id.* ¶ 6. The Court understands "unaffiliated voting power" to mean the voting power of stockholders not aligned with the Board.

[50] *See* Compl. ¶ 23; Compl., Ex. D (hereinafter "2023 Demand Letter").

[51] *See* Compl. ¶¶ 23-24; Compl., Ex. E.

[52] *See* Compl. ¶ 25.

Chancery declined to approve the settlement.[53]  Forte and Camac then submitted a stipulation and order dismissing the 2023 Lawsuit as moot (the "Dismissal Order").[54] The Dismissal Order stated Forte voluntarily acted to moot Camac's claims by: (1) "allowing the July 2022 shareholder rights plan to expire by its terms;"[55] (2) "reimburs[ing] Camac for its documented, out-of-pocket expenses incurred in the Proxy Contest;"[56] and (3) appointing "[t]wo (2) new independent directors . . . to the Board."[57]  After the court entered the Dismissal Order, Forte sought coverage from the Insurers.[58]  Each Insurer "reaffirmed their earlier denials of coverage,"[59] prompting Forte to initiate this litigation.[60]

---

[53] *Id.* ¶ 26.

[54] *Id.* ¶¶ 27-28; *see* Compl., Ex. F (hereinafter "Dismissal Order").

[55] Compl. ¶ 28.

[56] Dismissal Order.

[57] *Id.*

[58] *See* Compl. ¶ 34; Compl., Ex. Q.

[59] *See* Compl. ¶ 35; Compl., Ex. R; Ex. S; Ex. T.

[60] *See generally* Compl.

## C. PROCEDURAL HISTORY

Forte filed its Complaint in this Court in October 2024.[61] The Complaint advances three causes of action: (1) Count I – Declaratory Relief;[62] (2) Count II – Breach of Contract;[63] (3) Count III – Bad Faith.[64] Between December 2024 and January 2025, each Defendant answered the Complaint.[65]

On March 14, 2025, each party moved for Judgment on the Pleadings.[66] A month later, each party filed a brief opposing the other Motions.[67] The Court heard

---

[61] *See generally id.*

[62] *See id.* ¶¶116-18 (seeking a declaration that Wesco and Palms must "advance Defense Costs to Forte in connection with the allegations of the 2023 Lawsuit" or, in the alternative, that Beazley must "pay Costs, Charges and Expenses to Forte in connection with the [2023 Actions].").

[63] *See id.* ¶¶ 119-28 (alleging each Insurer breached their respective Policy by not providing coverage for the 2023 Lawsuit).

[64] *See id.* ¶¶ 129-38 (alleging Insurers denied Forte's coverage request in bad faith).

[65] *See generally* Wesco Answer; Palms Answer; Beazley Answer.

[66] *See generally* Wesco Opening Br.; Forte Opening Br.; Beazley Opening Br.

[67] *See generally* Defendants Wesco Insurance Company's and Palms Insurance Company, Limited's Opposition to Plaintiff's Motion for Judgment on the Pleadings (hereinafter "Wesco Opp'n Br.") (D.I. 44); Defendant Beazley Insurance Company, Inc.'s Response Brief in Opposition to Plaintiff, Forte Biosciences, Inc.'s and Defendants Wesco Insurance Company's and Palms Company, Limited's Motions for Judgment on the Pleadings (hereinafter "Beazley Opp'n") (D.I. 45); Plaintiff Forte Biosciences, Inc.'s Brief in Opposition to Defendants' Motions for Judgment on the Pleadings (hereinafter "Forte Opp'n Br.") (D.I. 46).

13

oral argument concerning the Motions on July 29, 2025, and took the matter under advisement.[68]

### III.    STANDARD OF REVIEW

Rule 12(c) permits a motion for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay [] trial."[69]  On such a motion, the Court's review "is limited to a review of the contents of the pleadings" and documents integral thereto.[70]  Courts evaluate motions for judgment on the pleadings under the same framework as a 12(b)(6) motion to dismiss.[71]  As such, the Court "view[s] the facts pleaded and the inferences to be drawn from such facts in [the] light most favorable to the non-moving party."[72]  Judgment on the pleadings is proper "only when no material issue of fact exists and the movant is entitled to judgment as a matter of law."[73]  A Rule 12(c) motion is often "a proper framework

---

[68] After argument, Plaintiff filed a Notice of Supplemental Authority. *See* D.I. 53. Defendant Wesco filed a response to Plaintiff's Notice shortly thereafter. *See* D.I. 56.

[69] Del. Super. Ct. Civ. R. 12(c).

[70] *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1204 (Del. 1993).

[71] *Williamson v. Home Depot*, 2023 WL 2445343, at *1 (Del. Super. Mar. 8, 2023) (citing *McMillan v. Intercargo Corp.*, 768 A.2d 492, 500 (Del. Ch. 2000)).

[72] *Desert Equities*, 624 A.2d at 1205 (citations omitted).

[73] *Id.* (citations omitted).

for enforcing unambiguous contracts because there is no need to resolve material disputes of fact."[74]

## IV. ANALYSIS

Before addressing the heart of the Motions, the Court clarifies various arguments raised in the briefing. Wesco makes two assertions which Forte does not dispute:[75] (1) "[t]he Wesco Policy does not cover the [Demand Letters] because [they are] . . . not a Securities Claim;"[76] and (2) the 2022 Lawsuit is "not [a] Securities Claim[] against Forte."[77] Forte admits for purposes of the Motions, "there is no coverage available for Forte's costs of defending the 2022 Demand, 2022 Lawsuit, and 2023 Demand because those claims do not meet the definition of 'Securities Claim' in the Wesco Policy."[78] In light of this concession, Forte argues that whether

---

[74] *Chi. Bridge and Iron Co. N.V. v. Westinghouse Elec. Co. LLC*, 166 A.3d 912, 925 (Del. 2017) (internal quotes omitted).

[75] Forte Opp'n Br. at 5.

[76] Wesco Opening Br. at 19-20, 22. The Wesco Policy only covers "Securities Claims" against Forte. Wesco Policy §§ I.C, II.O (defining "Securities Claims" as Claims "alleging a violation of any federal, state, local or foreign regulation, rule or statute regulating securities," or "brought derivatively on behalf of [Forte] by a security holder of [Forte].").

[77] *Id.* at 19, 23-24 (arguing the 2022 Lawsuit "sought to enforce [Camac's] statutory right to inspect [] Forte's books and records" which "'is a right entirely separate from the complex overlay of rights and regulations created under the federal securities laws.'" (quoting *Southpaw Credit Opportunity Master Fund LP v. Advanced Battery Techs., Inc.*, 2015 WL 915486, at *11 (Del. Ch. Feb. 26, 2015))).

[78] Forte Opp'n Br. at 5.

15

the Demand Letters are "Claims" is irrelevant for purposes of deciding the Motion.[79] The Court agrees it need not decide whether the Wesco Policy covers the Demand Letters or 2022 Lawsuit to resolve the Motions, which hinge on the linkage between the 2022 Demand and 2023 Lawsuit.[80]

Forte maintains it is entitled to coverage for the 2023 Lawsuit regardless of how the Court rules on meaningful linkage.[81] If the 2023 Lawsuit is meaningfully linked to the 2022 Demand, Forte argues the Wesco and Palms Policies provide coverage.[82] If not, Forte contends the Beazley Policy covers the 2023 Lawsuit.[83] Forte's primary argument, however, "is that Wesco and Palms are responsible for coverage of the 2023 Lawsuit because the 2023 Lawsuit arises out of the 2022

---

[79] *Id.* at 6 ("it is unnecessary for the Court to consider or rule on whether the 2022 Demand, the 2022 Lawsuit or the 2023 Demand were Claims for a Wrongful Act." (internal quotes omitted)).

[80] *See generally* Forte Opening Br.; Wesco Opening Br.

[81] Forte Opening Br. at 4-6.

[82] Forte Opening Br. at 4.

[83] *Id.* Forte only argues it is entitled to coverage for the 2023 Demand if the 2022 Demand is not meaningfully related to the 2023 Lawsuit, such that the Beazley Policy is implicated. *See id.* at 35-41 ("[i]f the 2023 Lawsuit is not covered under the Wesco and Palms Policies, then Forte is entitled to coverage for the 2023 Lawsuit *and 2023 Demand* under the Beazley Policy." (emphasis added)).

Demand[.]"[84] Beazley agrees the 2023 Lawsuit and 2022 Demand are meaningfully linked.[85]

All insurers dispute Forte's assertion that there is no situation in which Forte is not entitled to coverage. Wesco suggests there is a "gap" in Forte's Year 1 and Year 2 coverage, which they argue "does not entitle Forte to an unbargained-for extension of coverage under the Wesco and Palms Policies."[86] Beazley argues the Specific Event Exclusion bars coverage of the 2023 Lawsuit, even if "the Court finds no meaningful link between the 2023 Actions and the 2022 Demand[.]"[87] If that is the case, Beazley insists the Court should find the 2023 Actions are not covered, because they related to the Preliminary Proxy Solicitation.[88]

With these points clarified, resolution of the Motions depends on whether the 2023 Lawsuit is meaningfully linked to the circumstances or wrongful acts described in the 2022 Demand. If not, the Court must determine if the Beazley Policy nevertheless excludes coverage of the 2023 Actions.

---

[84] *Id.* at 5-6.

[85] Beazley Opening Br. at 1-3 (arguing the 2023 Actions "were explicit extensions of the ongoing entrenchment dispute between Camac and Forte's Board as described in [the] 2022 Demand, 2022 Lawsuit, and Preliminary Proxy Solicitation."); Beazley Opp'n Br. at 7-12 ("[t]he 2023 Actions are 'meaningfully linked' to the 2022 Demand.").

[86] Wesco Opp'n Br. at 26-27.

[87] Beazley Opp'n Br. at 2-3.

[88] *See id.* at 2-3, 12-14.

## A. THE 2023 LAWSUIT IS MEANINGFULLY LINKED TO THE 2022 DEMAND.[89]

Forte argues the Wesco Policy provides coverage for Losses related to the 2023 Lawsuit.[90]  Forte acknowledges Camac filed the 2023 Lawsuit after the Wesco Policy expired, but argues coverage exists because "the 2023 Lawsuit relates back to and arises out of the circumstances of the 2022 Demand[.]"[91]  The Wesco Policy covers claims alleging, arising out of, based upon or attributable to circumstances disclosed in previously accepted notice of circumstances.  Because the 2023 Lawsuit involves conduct meaningfully linked to the conduct alleged in the 2022 Demand, which Wesco accepted as a notice of circumstances, the Wesco and Palms Policies provide coverage for the 2023 Lawsuit.

---

[89] As discussed, Beazley agrees the 2023 Lawsuit arises out of facts at-issue in the 2022 Demand. *See* Beazley Opening Br. at 16-23; Beazley Opp'n Br. at 3-8. Beazley's and Forte's arguments on the relatedness issue are largely identical. *Compare* Beazley Opening Br. at 16-23, *and* Beazley Opp'n Br. at 3-8, *with* Forte Opening Br. at 23-35, *and* Forte Opp'n Br. at 16-31.

[90] *See generally* Forte Opening Br. at 23-35.

[91] Forte Opening Br. at 23-35.

### 1. THE WESCO POLICY EXPLICITLY COVERS CLAIMS ALLEGING, ARISING OUT OF, BASED UPON OR ATTRIBUTABLE TO CIRCUMSTANCES DISCLOSED IN PREVIOUSLY ACCEPTED NOTICE OF CIRCUMSTANCES.

Wesco argues that the 2022 Demand it accepted as a notice of circumstances does not relate to the 2023 Lawsuit for coverage purposes because the demand failed to provide sufficient context and details of the allegations against Forte.[92]  The Wesco Policy covers "any Claim [] subsequently [] made against [Forte] . . . alleging, arising out of, based upon or attributable to such circumstances or alleging any Wrongful Act which is the same as" those described in a notice of circumstances accepted by Wesco in Year 1.[93]  Forte sent Wesco a copy of the 2022 Demand, which Wesco accepted as a notice of circumstances.  Specifically, Wesco "accept[ed] the [2022] Demand as notice of circumstance which may give rise to a Claim related to a potential action against Forte in connection with its at-the-market offering of common stock, as described in Forte's Prospectus Supplement filed with the U.S. Securities and Exchange Commission on August 12, 2022."[94]

---

[92] Wesco Opp'n Br. at 10 ("Forte did not advise its insurers about what might have prompted Camac to issue the [2022 Demand], what Wrongful Acts Camac or others might allege, what allegations Forte anticipated, why Forte anticipated a Claim, or full particulars as to the dates, persons and entities involved.").

[93] Wesco Policy § VI.B.

[94] Wesco Letter.

Wesco suggests this language supports its argument that it could not have possibly been put on notice of the 2023 Lawsuit as a result of the 2022 Demand, noting that Wesco did not "accept the [2022 Demand] as a blanket notice of circumstances for any potential future claim that might mention" the ATM issuance.[95] And while this may be true, the Wesco Policy explicitly covers Claims alleging, arising out of, based upon or attributable to circumstances described in previously accepted notice of circumstances.[96] As discussed *infra*, the 2023 Lawsuit was not simply "any potential future claim" mentioning the ATM issuance. Rather, it was a claim meaningfully linked to the misconduct alleged in the 2022 Demand.

Wesco further contends the 2022 Demand fails to allege any Wrongful Acts.[97] Although Forte insists a notice of circumstances need not describe Wrongful Acts, it

---

[95] Wesco Opp'n Br. at 11.

[96] *See* Wesco Policy § VI.B (describing that provided wrongful acts are properly noticed during Year 1, "any Claim which subsequently is made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to such circumstances or alleging any Wrongful Act which is the same as or is a Related Wrongful Act to that alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstance or Wrongful Act originally was reported.").

[97] *See* Wesco Opening Br. at 27-29 ("the [2023 Lawsuit] does not arise out of Forte's [notice of circumstances] because Forte gave notice only of the [2022 Demand], which did not allege any Wrongful Acts."); Wesco Opp'n Br. at 1, 3, 7-13 ("the [2022 Demand] . . . does not allege any Wrongful Acts that could provide the requisite 'meaningful linkage' with the later [2023 Lawsuit]. . . . The proper inquiry is not whether the [2023 Lawsuit] alleged certain facts also mentioned in the [2022 Demand], but whether the [2022 Demand] discussed Wrongful Acts that later gave rise to the [2023 Lawsuit].").

maintains "the 2022 Demand does reference alleged Wrongful Acts by Forte and its directors."[98] The Court need not address whether the 2022 Demand alleges any Wrongful Acts because the Wesco Policy's plain and unambiguous terms cover Claims "arising out of, based upon or attributable to *such circumstances or* alleging any Wrongful Act which is the same as" one described in a notice of circumstances.[99] Hence, even if the 2022 Demand accepted as a notice of circumstances does not specifically allege any Wrongful Act, that does not bar coverage of the 2023 Lawsuit under the Wesco Policy.

Therefore, the remaining question is whether the 2023 Lawsuit "aris[es] out of, [is] based upon or [is] attributable to [the] circumstances" described in the 2022 Demand.[100]

### 2. AN *ALEXION* ANALYSIS CONFIRMS THE 2023 LAWSUIT IS MEANINGFULLY LINKED TO CIRCUMSTANCES DISCLOSED IN THE 2022 DEMAND.

The Supreme Court of Delaware recently held the phrases "'arises out of' and other similar terms, [] require[e] some 'meaningful linkage'" between imposed

---

[98] Forte Opp'n Br. at 8-10 (citing Wesco Policy § VI(B)).

[99] *See O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 288 (Del. 2001) ("where the language of a policy is clear and unequivocal, the parties are to be bound by its plain meaning."); Wesco Policy § IV(B) (emphasis added); *see also Weinberg v. Waystar, Inc.*, 294 A.3d 1039, 1045 (Del. 2023) (holding "'or' is disjunctive.").

[100] Wesco Policy § IV(B).

contractual conditions.[101]  A "tangential" linkage is insufficient.[102]  However, "[t]he Delaware Supreme Court has 'instructed lower courts to implement meaningful linkage in a coverage context broadly, where possible, to find coverage.'"[103] Moreover, under Supreme Court precedent there is a difference between comparing an insurance claim and notice of circumstances, as compared to two claims.[104] Specifically, courts adopt a broader "scope of [] inquiry" when determining whether

---

[101] *In re Alexion Pharm., Inc. Ins. Appeals*, 339 A.3d 694 (Del. Feb. 4, 2025) (quoting *Pac. Ins. Co. v. Liberty Mut. Ins. Co.*, 956 A.2d 1246, 1257 (Del. 2008)).  The parties generally agree the "meaningful linkage" test provides the proper standard to evaluate whether the 2023 Lawsuit arises out of the circumstances or alleged Wrongful Acts described in the 2022 Demand.  *See* Forte Opening Br. at 23-28 ("the relevant language of the Wesco Policy requires a 'meaningful linkage' between a later claim and an earlier notice of circumstances.") (citation modified); Wesco Opening Br. at 29-38 ("for the [2023 Lawsuit] to arise out of the [2022 Demand], there must be a meaningful link that connects the factual circumstances underpinning . . . each matter." (internal quotes omitted)).  Nevertheless, Forte criticizes Wesco for relying on caselaw rejected by the Supreme Court of Delaware. *See* Forte Opp'n Br. at 16-19, 21-22 (noting the *First Solar* court rejected the "fundamentally identical" test and a "past/future [activity] distinction[.] (citing *First Solar*, 274 A.2d at 1015)).  To the extent Wesco cites any out-of-date caselaw, the Court does not rely on such authority for any improper purpose and instead analyzes the Motions under the proper standard.

[102] *Alexion*, 339 A.3d 694, at 703.

[103] *Nat'l Amusements, Inc. v. Endurance Am. Specialty Ins. Co.*, 2025 WL 720455, at *8 (Del. Super. Feb. 17, 2025) (quoting *Options Clearing Corp. v. U.S. Specialty Ins. Co.*, 2021 WL 5577251, at *8 (Del. Super. Nov. 30, 2021) (citing *Pac. Ins. Co. v. Liberty Mut. Ins. Co.*, 956 A.2d 1246, 1256-57 & n.42 (Del. 2008)).

[104] *See Alexion*, 339 A.3d 694, at 703 ("the court erred in identifying the objects of comparison for the meaningful linkage analysis. [Insured's] 2015 Notice was not a claim. . . . By treating the 2015 Notice as a claim, however, the Superior Court [impermissibly] narrowed the scope of the inquiry[.]").

a claim and notice of circumstances are meaningfully linked.[105] The primary factor in determining whether a notice and a claim are meaningfully linked is whether they "involve the same conduct."[106]

Forte insists "the 2022 Demand and the 2023 Lawsuit involve the same underlying wrongful act—the alleged continuing conduct of Forte's board, in breach of their fiduciary duties, to dilute the value of the company's stock and entrench themselves."[107] Wesco in turn argues the 2023 Lawsuit "clearly do[es] not" involve the same conduct as the 2022 Demand it accepted as a notice of circumstances.[108] Wesco criticizes Forte for "misrepresent[ing] the factual record" by relying on

---

[105] *Id.*

[106] *Alexion*, 339 A.3d 694 at 704 ("[b]ecause both the [notice of circumstances] and the [claim] involve the same conduct, it does not matter whether the [underlying litigations] are different parties, asserted different theories of liability, or sought different relief. It is the common underlying wrongful acts that control.").

[107] Forte Opening Br. at 28-31 (describing the overlapping allegations in the 2022 Demand and 2023 Lawsuit). Forte also asserts the Court of Chancery held the 2023 Lawsuits was interrelated with the Forte's Board's earlier actions, including those at issue in the 2022 Demand. *See id.* at 31-33 (citing Compl., Ex. E). To support that argument, Forte relies on the Court of Chancery's decision resolving the motion to dismiss in the 2023 Lawsuit. It is axiomatic that courts "may not resolve material factual disputes" on a motion to dismiss. *See Malpiede v. Townson*, 780 A.2d 1075, 1082 (Del. 2001).

[108] Wesco Opening Br. at 31-32 ("[t]he conduct at issue in the [2022 Demand] was the approval of the ATM offering in 2022. The conduct at issue in the [2023 Lawsuit] included the Directors' decision to delay the 2023 annual meeting, approval of the PIPE, and sequencing of the PIPE and record date to permit PIPE shares to vote at the annual meeting[.]").

"allegations about [Forte's] general misconduct," rather than facts showing the 2023 Lawsuit alleged "Wrongful Acts [] which . . . had any meaningful linkage with the [2022 Demand]."[109] Yet, Wesco acknowledges that the 2022 Demand it accepted as a notice of circumstances describes early actions by Forte's Board supporting an inference of a perceived threat of control and defense measures taken in response.[110]

Applying *Alexion*, the Court finds that the 2023 Lawsuit involves the same alleged conduct as the 2022 Demand, which Wesco accepted as a notice of circumstances: The Forte Board's use of value-destructive, power-dilutive stock transactions to entrench incumbent management to fend off unrest at the expense of Forte's unaffiliated investors. The 2022 Demand sought access to Forte's books and records to investigate "a value destructive transaction" which "dilute[d] [Forte's] stockholders at disadvantageous prices."[111] That transaction "call[ed] into question the independence of the Board and whether [Forte's] fiduciaries are acting in the best interests of the Company's stockholders," and specifically cited the ATM issuance as being "done to benefit Company insiders."[112] Importantly, the 2022 Demand alleged that "the Company executed [the ATM issuance] after the emergence of four

---

[109] Wesco Opp'n Br. at 16-20 ("[t]he 2022 ATM offering and the [2022 Demand] were mere background in Camac's story as told in the [2023 Lawsuit].").

[110] Wesco Opp'n Br. at 16.

[111] 2022 Demand.

[112] *Id.*

24

separate engaged shareholders who filed 13Ds which called into question the current direction of the company."[113] In sum, the 2022 Demand sought to examine "the independence of Board members" in light of an allegedly value destructive transaction Forte entered into following revelations of activist stockholders questioning Forte's direction.[114]

Reading the 2022 Demand as being limited solely to the ATM offering as Wesco suggests would be ignoring both the circumstances of the 2022 Demand, as well as *Alexion*'s direction to broaden the "scope of inquiry" evaluation in determining whether a notice of circumstances is meaningfully linked to a later claim.[115]

Specifically, the 2022 Demand and the 2023 Lawsuit both involved Forte's Board's efforts to resist Camac's attempt to contest Forte's management.[116] The 2023 Lawsuit outlines a course of conduct by which Forte's Board continuously rebuffed Camac's attempts to confront Forte's management.[117] These allegations show that but-for the 2022 Demand Wesco accepted as a notice of circumstances, Camac would not have issued the Preliminary Proxy Statement which triggered the

---

[113] *Id.*

[114] *Id.*

[115] *Alexion*, 339 A.3d 694, at 703.

[116] *See* 2023 Lawsuit.

[117] *See id.* ¶¶ 1-13, 24-77.

PIPE sale at the center of the 2023 Lawsuit.[118]   Moreover, the 2023 Lawsuit

explained the role of the ATM issuance in Camac's and Forte's broader dispute.[119]

Therefore, although the 2023 Lawsuit primarily refers to the PIPE sale, it does so in

the context of challenging Forte's mismanagement and efforts to entrench the Board

via value diluting transactions.[120]  The circumstances described in the 2022 Demand

were integral parts of Camac's argument in the 2023 Lawsuit.[121]  Accordingly, there

is a meaningfully link between the 2022 Demand which Wesco accepted as a notice

of circumstances and the 2023 Lawsuit because they allege the same underlying

conduct—board-concocted reactionary defensive measures designed to dilute stock

---

[118] *See id.*

[119] *Id.* ¶¶ 6 ("[Forte's Board] initiated an at-the-market offering (intended to neutralize unaffiliated voting power)."), 27, 46-49 ("the Board revealed that it had used the At-The-Market-Offering to substantially dilute all unaffiliated stockholders at prices below the net cash per share[.]"), 53-54.

[120] *See id.*  Indeed, the 2022 Demand explicitly contemplates the possibility of "a shareholder derivative lawsuit" alleging the "Board did not properly discharge their fiduciary duties."  *See* 2022 Demand.  The 2023 Lawsuit is itself a derivative lawsuit alleging Forte's Board violated their fiduciary duties.  *See* 2023 Lawsuit ¶¶ 128-25, 146-52.

[121] *See id.* ¶¶ 46 ("the Board revealed that it had used the At-The-Market Offering to substantially dilute all unaffiliated stockholders at prices below the net cash per share, including . . . Camac."), 48-49 (suggesting the Board's proffered justification for the ATM offering was a misdirection), 54-55 (alleging the ATM offering and Camac's resulting share dilution caused the 2022 Demand), 82-101 (discussing how the PIPE transaction entrenched Forte's Board with a value destructive stock sale), 134 (alleging Forte's Board "approved the PIPE in bad faith for purposes of purposes of entrenchment" via value dilution.").

valuation and fend off stockholder inquiry into Board management.[122]  As such, the Wesco and Palms Policies provide coverage for the 2023 Lawsuit.  The Court **GRANTS** Forte's Motion and **DENIES** Wesco's Motion concerning the coverage dispute.  Because the 2023 Lawsuit meaningfully linked to the 2022 Demand and covered by the Wesco Policy, the Beazley Policy provides no coverage.[123]  Accordingly, the Court **GRANTS** Beazley's Motion regarding the Beazley Policy coverage issue.

---

[122] Finding the 2022 Demand and 2023 Lawsuit "involve the same conduct" is sufficient to hold the two are meaningfully linked.  *See Alexion*, 339 A.3d 694, at 703 ("[b]ecause both the [notice of circumstances] and the [claim] involve the same conduct, it does not matter whether the [underlying litigations] are different parties, asserted different theories of liability, or sought different relief. It is the common underlying wrongful acts that control.").

[123] *See* Beazley Policy § III.B.1 (excluding coverage for "any Wrongful Act or any fact, circumstance or situation which has been the subject of any notice given prior to the Policy Period[.]").

## B. FORTE'S BAD FAITH CLAIM FAILS AS A MATTER OF LAW.

Insurers' Motions seek judgment on the pleadings concerning Forte's bad faith claim.[124] Forte alleges each Insurer "had no reasonable basis" to adopt its coverage position, and thus "unreasonably refused to" cover the 2023 Lawsuit.[125] Forte asserts Insurers acted "purposeful[ly]" and "with knowledge" in denying Forte's claims.[126] Insurers deny these allegations[127] and contend that Forte's bad faith claim fails as a matter of law.[128]

Insurers argue the Court should enter judgment in their favor on Forte's bad faith claim because they each properly denied coverage under the terms of their respective policies.[129] Beazley contends that bad faith requires a "denial of coverage [] be 'willful' or 'malicious' and [that] 'the bad faith actions of an insurer [be] taken with reckless indifference or malice towards the plight of the [insured].'"[130] Insurers

---

[124] *See* Beazley Opening Br. at 24-25; Wesco Opening Br. at 38.

[125] Compl. ¶¶ 129-34. Additionally, Forte alleges Beazley also "unreasonably refused to advance, pay, and/or reimburse . . . Costs incurred as a result of the 2023 Demand." *Id.* ¶ 135.

[126] *Id.* ¶¶ 136-38.

[127] *See* Wesco Answer ¶¶ 129-38; Palms Answer ¶¶ 129-38; Beazley Answer ¶¶ 129-38.

[128] *See* Beazley Opening Br. at 24-25; Wesco Opening Br. at 38.

[129] *See* Beazley Opening Br. at 24-25; Wesco Opening Br. at 38.

[130] Beazley Opening Br. at 24-25 (quoting *Powell v. AmGUARD Ins. Co.*, 2019 WL 2114083, at *4 (Del. Super. May 14, 2019) (edits in original)).

assert there "was a bona fide dispute as to whether the Wesco and Palms Policies afford coverage for the [2023 Lawsuit]," which bars the bad faith claim.[131]

Forte maintains judgment on the pleadings regarding its bad faith claim is improper.[132] Forte contends Insurers' bad faith forced it to plead in the alternative.[133] Moreover, Forte insists "the reasonableness and intent of the losing insurer's denial is a question of fact" which precludes judgment on the pleadings.[134]

To prove a bad faith claim, the insured "must show [] the insurer's refusal to honor its contractual obligation *was clearly without any reasonable justification*."[135] "Reasonable justification requires" the insurer knows the relevant facts "at the time of the denial," such that "a *bona fide* coverage dispute" exists.[136] A coverage denial

---

[131] Wesco Opening Br. at 39; *see* Beazley Opening Br. at 25.

[132] Forte Opp'n Br. at 38-40.

[133] *Id.* at 38. Forte argues Insurers should have "work[ed] out coverage between themselves after fully protecting the insured's interest" to comply with their good faith obligation. *Id.* at 39. Instead, Forte maintains Insurers "behaved unreasonably, elevated their interests over the insured's, and contributed to the substantial hardship Forte suffered[.]" *Id.* (citing *Hostetter v. Hartford Ins. Co.*, 1992 WL 179423, at *7 (Del. Super. July 13, 1992)).

[134] *Id.* at 38-39 ("[t]he losing insurer's 'strategy, mental impressions and opinions' regarding the handing of the claim will be directly at issue." (quoting *Tackett v. State Farm Fire & Cas. Ins. Co.*, 653 A.2d 254, 263 (Del. 1995))).

[135] *GEICO Gen. Ins. Co. v. Green*, 276 A.3d 462 (Del. 2022) (emphasis added).

[136] *Zurich Am. Ins. Co. v. Syngenta Crop Protection LLC*, 314 A.3d 665, 683 (Del. 2024) (citations omitted); *see RSUI Indem. Co. v. Murdock*, 248 A.3d 887 (Del. 2021) ("[t]he question is whether the insurer is aware of facts and circumstances, at the time of denial, that support a bona fide dispute as to whether the loss is covered.").

does not lack reasonable justification simply because a court "ultimately disagree[s] with [insurer's] position[.]"[137] Although reasonableness can be a factual issue,[138] the Supreme Court of Delaware permits resolution of bad faith claims on the pleadings when the complaint does not include allegations evidencing a lack of reasonable justification.[139]

Based on that standard, Forte's bad faith claim fails as a matter of law. Vague allegations that Insurers "had no reasonable basis" to deny coverage, do not rise to the level of specific facts establishing a lack of any reasonable justification.[140] The Complaint and Insurers' coverage denial letters evidence a bona fide dispute regarding whether the 2023 Lawsuit fell within Forte's Year 1 or Year 2 D&O policies.[141] Specifically, there was a legitimate dispute concerning whether the 2023 Lawsuit arose out of the circumstances discussed in the 2022 Demand, which Wesco

---

[137] *ACE Am. Ins. Co. v. Guaranteed Rate, Inc.*, 305 A.3d 339, 350 (Del. 2023).

[138] *See Casson v. Nationwide Ins. Co.*, 455 A.2d 361, 369 (Del. 1982) ("[w]here the issue to be tried is one of disputed fact, the question of bad faith refusal to pay should not be submitted to the jury unless it appears that the insurer did not have reasonable grounds for relying upon its defense to liability.").

[139] *See Dunlap v. State Farm Fire and Cas. Co.*, 878 A.2d 434, 437, 440 (Del. 2005) (holding the same under a 12(b)(6) standard, with this Court has previously stated is analogous to judgment on the pleadings).

[140] *See* Compl. ¶¶ 129-138.

[141] *See id.* ¶¶ 54-60; 70-75; 95-100; Compl., Ex. H; Ex. J; Ex. K; Ex. L; Ex. M; Ex. O; Ex. P.

accepted as a notice of circumstances.[142]  Although the Court agrees with Beazley and Forte's coverage position, Wesco's denial was based in a genuine belief that its policy did not cover the claims Forte asserted.[143]  The Complaint does not plead facts showing any Insurer's coverage denial was clearly without any reasonable justification.  The fact that recent caselaw clarified the meaningful linkage standard during the pendency of this litigation bolsters this conclusion.[144]  Accordingly, the Court **GRANTS** Insurers' Motions regarding Forte's bad faith claim.

## V.  CONCLUSION

For the reasons discussed, the Court **GRANTS** Forte's Motion; **GRANTS** in part, **DENIES** in part Wesco's Motion; and **GRANTS** Beazley's Motion.


**IT IS SO ORDERED.**


/s/ Patricia A. Winston

**Patricia A. Winston, Judge**

---

[142] *See, e.g.*, Compl., Ex. J (Wesco denying coverage because the 2023 Lawsuit is not meaningfully related to the 2022 Demand); Ex. K (Palms adopting Wesco's coverage position); Ex. O (Beazley denying coverage because the 2023 Lawsuit is meaningfully related to the 2022 Demand).

[143] *See supra* IV.A.

[144] *See First Solar*, 274 A.2d at 1015; *Alexion*, 339 A.3d at 703.